197 P.3d 127 (2008)
Joseph A. SIMONETTA and Janet E. Simonetta, a married couple, Respondents,
v.
VIAD CORPORATION f/k/a The Dial Corporation, individually and as Successor to Griscom Russell Company, Petitioner, and
Saberhagen Holdings, Inc., as successor to Tacoma Asbestos Company and The Brower Company; Bartells Asbestos Settlement Trust; Aqua-Chem, Inc., individually and as successor to Cleaver-Brooks Company; Foster Wheeler Energy Corporation; General Electric Company; General Refractories Company; IMO Industries, Inc., individually and as successor-in-interest to De Laval Turbine, Inc.; Ingersoll-Rand Company; Viacom Inc., individually and as successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation; Warren Pumps, Inc.; Dial Corporation, individually and as successor to Griscom Russell Company; Elliott Company, a/k/a Elliott Turbomachinery Co., Inc.; Carrier Corporation, individually and as successor-in-interest to Bryant Heating & Manufacturing Co.; J.T. Thorpe & SON, INC a/k/a J.T. Thorpe Company; Allis-Chalmers Corporation, individually and as successor to The Buda Company; and Quimby Equipment Co., Inc., Defendants.
No. 80076-6.
Supreme Court of Washington, En Banc.
December 11, 2008.
*129 Ronald Clayton Gardner, David D. Mordekhov, Gardner Bond Trabolsi PLLC, Seattle, WA, for Petitioner.
Matthew Phineas Bergman, David S. Frockt, Brian F. Ladenburg, Bergman & Frockt PLLC, John Wentworth Phillips, John Matthew Geyman, Phillips Law Group PLLC, Seattle, WA, for Respondents.
Frederick D. Baker, Brian R. Thompson, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, John Alan Knox, William Kastner & Gibbs, PLLC, Seattle, WA, for Amicus Curiae, Caterpillar, Inc.
Jeanne F. Loftis, Bullivant Houser Bailey PC, Erich Gleber, Steven Rosenblatt, Amy Fenno, Segal McCambridge Singer & Mahoney, New York, NY, Allen E. Eraut, Rizzo Mattingly Bosworth PC, Portland OR, for Amicus Curiae, Flowserve Corporation.
Mark Bradley Tuvim, Corr Cronin Michelson Baumgardner & Preece, Seattle, WA, for Amicus Curiae, Ingersoll-Rand Company, Leslie Controls.
Deborah J. La Fetra, Timothy Sandefur, Alissa J. Strong, Elizabeth A. Yi, Pacific Legal Foundation, Sacramento, CA, Diana M. Kirchheim, Washington State Senate, Olympia, WA, for Amicus Curiae, Pacific Legal Foundation.
William Joel Rutzick, Schroeter Goldmark & Bender, Seattle, WA, for Amicus Curiae, Schroeter Goldmark & Bender.
Stewart Andrew Estes, Keating Bucklin & McCormack, Seattle, WA, for Amicus Curiae, Washington Defense Trial Lawyers.
C. JOHNSON, J.
¶ 1 This case presents the issue of whether under the common law a manufacturer can be held liable for failure to warn of the hazards of another manufacturer's product. Joseph Simonetta claims his lung cancer was the result of exposure to asbestos while employed by the United States Navy. Simonetta performed maintenance on an evaporator, a device that desalinates seawater, manufactured by Griscom Russell, a company of which Viad Corporation is the purported successor. After the evaporator was shipped from the Griscom Russell plant in 1941 or 1942, it was insulated with asbestos products manufactured by another company and installed by the navy or another entity. The exposure contributing to the lung cancer allegedly occurred in 1958 or 1959 when, during maintenance work on the evaporator, asbestos insulation had to be removed from the equipment. While the trial court granted summary judgment for Viad, the Court of Appeals reversed, holding that under common law negligence and strict product liability, Griscom Russell had a duty to warn about *130 the dangers of respirable asbestos released during the use of its product. We reverse the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Joseph Simonetta served in the United States Navy from 1954 to 1974. From 1958 to 1959, he served as a fireman and machinist mate aboard the USS Saufley. Clerk's Papers (CP) at 191. He performed maintenance on an evaporator, also called a distilling plant (a device that converts seawater to freshwater), manufactured by Viad's purported predecessor, Griscom Russell.[1] After the evaporator was shipped from the manufacturer's plant, in 1941 or 1942, while the Saufley was under construction, it was insulated with asbestos mud and cloth products manufactured by another company and installed by the navy or another entity. To service the evaporator, Simonetta claims he would "pry or hack away" the asbestos insulation with a hammer and then re-insulate the machine after he was done. CP at 197-98.
¶ 3 Simonetta was diagnosed with lung cancer in 2000 and 2002. His medical expert testified that there was a causal link between the cancer and Simonetta's exposure to asbestos while in the navy. Simonetta filed negligence and strict liability claims against Viad for failure to warn of the hazards of asbestos exposure. He did not know the identity of the company that manufactured or installed the insulation on the evaporator.
¶ 4 The trial court denied Viad's motion for summary judgment as to corporate successor liability and exposure to asbestos-containing gaskets due to genuine issues of material fact. The trial court granted Viad's motion for summary judgment on the issue of duty to warn, reasoning that though Viad knew or reasonably should have known that its product would be insulated with asbestos-containing material, the evaporator itself did not produce the injury. Simonetta voluntarily dismissed all remaining claims and appealed.[2] CP at 1374-75.
¶ 5 The Court of Appeals, Division One, reversed the grant of summary judgment. Simonetta v. Viad Corp., 137 Wash.App. 15, 151 P.3d 1019 (2007), linked with Braaten v. Saberhagen Holdings, 137 Wash.App. 32, 151 P.3d 1010 (2007). On the common law negligence claim, the court held that Viad had a duty to warn of the risk of asbestos exposure with respect to servicing the evaporator. It found that Viad was aware that exposure would occur during the use and maintenance of its product because the evaporator needed insulation to operate properly, the navy used asbestos insulation, and workers would have to disturb the asbestos insulation to perform maintenance. The court determined that "[w]hile this duty has not traditionally applied to products manufactured by another, this present case represents a set of facts that compels another logical extension of the common law." Simonetta, 137 Wash.App. at 25, 151 P.3d 1019.
¶ 6 Regarding strict liability, the court found that although the evaporator left the factory without insulation, it was defective. The court based its reasoning on the conclusion that the evaporator had to be encapsulated in insulation for use, yet it included no warning about the risk of exposure to a known danger that would result from disturbing the insulation during ordinary use and maintenance. Accordingly, the court held that "when a product requires the use of another product and the two together cause a release of a hazardous substance, the manufacturer has a duty to warn about the inherent dangers." Simonetta, 137 Wash.App. at 31, 151 P.3d 1019.
*131 ¶ 7 The Court of Appeals denied Viad's motion for reconsideration and/or clarification. We granted Viad's petition for review. Simonetta v. Saberhagen Holdings, 162 Wash.2d 1011, 175 P.3d 1094 (2008).

ISSUE
Whether Viad may be liable for failure to warn of the dangers of asbestos exposure resulting from another manufacturer's insulation under common law negligence or common law strict liability.

ANALYSIS
¶ 8 Because Simonetta's claimed asbestos exposure occurred prior to the 1981 enactment of the Washington product liability act (WPLA), chapter 7.72 RCW, we analyze the common law of strict liability and negligence.

Negligence
¶ 9 Under the law of negligence, a defendant's duty is to exercise ordinary care. A manufacturer's duty of ordinary care includes a duty to warn of hazards involved in the use of a product, which are or should be known to the manufacturer. Restatement (Second) of Torts § 388 (1965).[3] Thus, in a negligence action alleging failure to warn, the focus is on the conduct of the manufacturer. The only issue pertaining to negligence raised on appeal is whether Viad owed a duty of care to Simonetta. Whether such a duty is owed is a question of law that generally depends on mixed considerations of logic, common sense, justice, policy, and precedent.[4]
¶ 10 Simonetta claims that Viad breached its duty to warn him of the risks from the intended use of the evaporator, which included routine and necessary maintenance and which caused his physical condition. He argues that neither § 388 nor Washington case law requires that physical harm be inflicted by the product itself in order for a duty to warn to arise. In support, he emphasizes language in § 388 that the physical harm must be caused by the use of the chattel in the manner for which it is intended and by a person for whose use it is supplied. Thus, Simonetta argues that the relevant inquiry is whether the manufacturer of a potentially dangerous product must warn of the hazards associated with the product's usethe hazard here being the risks arising from the expected use of the evaporator in conjunction with asbestos insulation. He asserts that he introduced evidence on every element of Viad's liability for failure to warn under § 388. He claims that Viad's own expert witness testified that the evaporator required insulation to function properly, that such insulation contained asbestos, that the company knew or should have known of the use, and that the insulation would be disturbed during normal maintenance.
*132 ¶ 11 Viad argues that it was not negligent because it did not have a duty to warn of the dangers of asbestosa product it did not manufacture, supply, or sell. The Court of Appeals disposed of this argument, finding that the danger of asbestos exposure was inherent in the use of the evaporator because the evaporator was built with the knowledge that insulation was required for proper operation and that workers would need to invade the insulation for maintenance. However, a careful review of case law interpreting failure to warn cases under § 388 does not support the Court of Appeals' conclusion.
¶ 12 In the following cases, the claims for § 388 failure to warn were posited only against parties in the chain of distribution of the product. See Du Von v. Rockwell Int'l, 116 Wash.2d 749, 807 P.2d 876 (1991) (holding plaintiff had claim under § 388 for injuries resulting from an exhauster supplied by an alleged non-manufacturer and despite non-manufacturer's lack of intent to introduce the exhauster into the stream of commerce); Reichelt v. Johns-Manville Corp., 107 Wash.2d 761, 772, 733 P.2d 530 (1987) (referencing § 388 as establishing the duty of ordinary care as manufacturer's duty to warn of hazards involved in the use of its product, but dismissing as time-barred plaintiff's negligence claim in asbestos exposure case); Lockwood v. AC & S, Inc., 44 Wash.App. 330, 722 P.2d 826 (1986) (considering evidentiary issues in context of § 388 claim against asbestos manufacturer where plaintiff alleged negligent failure to warn of dangers inherent in use of manufacturer's asbestos products), aff'd, 109 Wash.2d 235, 744 P.2d 605 (1987); Baughn v. Honda Motor Co., 107 Wash.2d 127, 137, 727 P.2d 655 (1986) (citing § 388 as establishing duty of ordinary care, which included duty to warn of hazards involved in use of a product, which are or should be known to the manufacturer, and holding it was not error to find manufacturer Honda satisfied its duty to warn under laws of negligence and strict liability); Mele v. Turner, 106 Wash.2d 73, 720 P.2d 787 (1986) (rejecting plaintiff's negligence claim based on failure to warn under § 388, where the alleged dangerous condition of defendant's lawn mower supplied for plaintiff's use was both obvious and known to plaintiff); Zamora v. Mobil Corp., 104 Wash.2d 199, 704 P.2d 584 (1985) (citing to § 388(a) in holding that seller of bulk propane had no duty to warn of hazards of propane it never possessed or handled because hazards were obvious to the retailer of the propane, who held the duty to warn the ultimate consumer); Novak v. Piggly Wiggly Puget Sound Co., 22 Wash.App. 407, 591 P.2d 791 (1979) (finding as a matter of law manufacturer of BB gun provided sufficient warnings of the hazards of the gun to preclude liability under both strict liability and § 388 negligence theories); Little v. PPG Indus., Inc., 19 Wash.App. 812, 579 P.2d 940 (1978) aff'd, 92 Wash.2d 118, 594 P.2d 911 (noting that the objective of the rule of strict liability with respect to dangerous products focuses on adequacy of the warning given by supplier, or necessity of the warning, while negligence under § 388 focuses on supplier's conduct); Ewer v. Goodyear Tire & Rubber Co., 4 Wash.App. 152, 480 P.2d 260 (1971) (finding that where manufacturer Goodyear provided no warning of the hazard of "bead breaking" in its tires during mounting procedures, there was a factual issue as to whether the danger was sufficiently obvious such that Goodyear had no duty to warn); Callahan v. Keystone Fireworks Mfg. Co., 72 Wash.2d 823, 826, 435 P.2d 626 (1967) (finding sufficient evidence of negligent duty to warn to uphold jury verdict against manufacturer of defective bomb included in a fireworks show that caused plaintiff injury); Fleming v. Stoddard Wendle Motor, Co., 70 Wash.2d 465, 467-68, 423 P.2d 926 (1967) (adopting Restatement (Second) of Torts § 388 (1965), regarding duty to disclose and holding individual seller who modified transmission safety switch on truck liable for failure to warn of potential hazard, though he traded the truck "as is"); Bock v. Truck & Tractor, 18 Wash.2d 458, 469, 139 P.2d 706 (1943) (citing Restatement of Torts § 388 (1934), in holding dealer in secondhand vehicles who undertakes to refurbish such vehicles for later sale has same duty as manufacturer to exercise reasonable care to ensure vehicle's safe condition); Belcher v. Lentz Hardware Co., 13 Wash.2d 523, 125 P.2d 648 (1942) (examining Restatement of Torts § 388 (1934), in determining personal injury plaintiff presented insufficient evidence of defect *133 in weed burner sold by defendant retailer to sustain judgment against retailer).
¶ 13 In all of these cases, the plaintiffs claimed § 388 failure to warn against the alleged hazardous product's manufacturer, seller, or supplier. The language of § 388 discusses the supplier's responsibility to warn of the dangers of a product. A supplier is defined in the Restatement as "any person, who for any purpose or in any manner gives possession of a chattel for another's use ... without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used." Restatement (Second) of Torts § 388 cmt. c (1965). Suppliers include vendors, lessors, and donors. The cases discussed above are consistent with the limitation established under the Restatement.
¶ 14 The one case the Court of Appeals discussed in its negligence analysis was Sepulveda-Esquivel v. Central Machine Works, Inc., 120 Wash.App. 12, 84 P.3d 895 (2004). In Sepulveda, a case governed by the WPLA, the Court of Appeals, Division Two, examined liability where a person was injured when a load fell from a hook that had been modified by his employer, forged by one company, and supplied by another. The court considered the entire assembly, which included the component hook, as a unit, and found that the hook itself was not defective; thus, the defendants who forged and supplied the hook were not liable. Viad argued that in the present case, as in Sepulveda, the danger was in the finished assembly and arose from the asbestos insulation provided by another, though both evaporator and insulation functioned as intended. We interpret Sepulveda to align the WPLA with the common law limitations in that component sellers are not generally liable when the component itself is not defective.[5]
¶ 15 Washington cases discussing and analyzing § 388 liability generally limit the analysis of the duty to warn of the hazards of a product to those in the chain of distribution of the product, such as manufacturers, suppliers, or sellers. Therefore, we find little to no support under our case law for extending the duty to warn to another manufacturer's product.
¶ 16 Case law from other jurisdictions similarly limits the duty to warn in negligence cases to those in the chain of distribution of the hazardous product. See, e.g., Cleary v. Reliance Fuel Oil Assocs., 17 A.D.3d 503, 793 N.Y.S.2d 468 (N.Y.App.Div.2005) (finding manufacturer of water heater had no duty to warn of dangers of misplacing an aquastat it did not manufacture in its product); In re Deep Vein Thrombosis, 356 F.Supp.2d 1055, 1067-68 (N.D.Cal.2005) (finding Boeing, a manufacturer of commercial aircrafts, had no duty to warn the airlines about defective seats, manufactured and installed by another, which could result in deep vein thrombosis in passengers, i.e., "[t]he court can find no case law that supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchaser may or may not use to complement the product bought from the manufacturer."); Blackwell v. Phelps Dodge Corp., 157 Cal.App.3d 372, 203 Cal.Rptr. 706 (1984) (holding where sulfuric acid spewed out of tank and injured plaintiff, though defendant supplier of sulfuric acid knew type of tank used to transport sulfuric acid, supplier did not have duty to warn under § 388 of danger of pressure buildup in tanktank manufacturer had duty); Walton v. Harnischfeger, 796 S.W.2d 225 (Tex.Ct.App.1990) (finding defendant crane manufacturer had no duty to warn under negligence or strict liability theories of a nylon strap used as rigging material because defendant did not manufacture, distribute, sell, or otherwise place nylon strap into stream of commerce); Cipollone v. Yale Indus. Prods., Inc., 202 F.3d 376 (1st Cir.2000) (holding manufacturer of component liable only if defect existed in manufacturer's component itself; manufacturer of nondefective lift, integrated by another company into larger *134 package-handling system, was not liable under negligence theory for injury that resulted from defect in entire system); but see Cooley v. Quick Supply Co., 221 N.W.2d 763 (Iowa 1974) (upholding jury verdict, finding under § 388 defendant supplier of dynamite fuse had duty to warn because fuse was sold to be used as a trigger for detonating dynamite, a highly dangerous substance, supplied by another).
¶ 17 Under the language of § 388 and our precedent applying § 388, we hold the duty to warn is limited to those in the chain of distribution of the hazardous product. Because Viad did not manufacture, sell, or supply the asbestos insulation, we hold that as a matter of law it had no duty to warn under § 388. We reverse the Court of Appeals on the question of negligence.

Strict Liability
¶ 18 We apply the rule of strict liability embodied in the Restatement (Second) of Torts § 402A (1965), as the law in this jurisdiction with respect to unreasonably dangerous products.[6] Section 402A declares that a product, though faultlessly manufactured and designed, may not be reasonably safe when placed in the hands of the ultimate user without first giving an adequate warning concerning the manner in which to safely use the product. Liability is imposed on parties in the chain of distribution, including sellers, wholesale or retail dealers or distributors, and manufacturers. Tabert, 86 Wash.2d at 148-49, 542 P.2d 774; Restatement (Second) of Torts § 402A cmt. f. We justify imposing liability on the defendant who, by manufacturing, selling, or marketing a product, is in the best position to know of the dangerous aspects of the product and to translate that knowledge into a cost of production against which liability insurance can be obtained. Here, Viad did not manufacture or market the asbestos insulation. Nor did Viad have control over the type of insulation the navy selected. Thus, as the following analysis of these factors establishes, Viad is not strictly liable for failure to warn.
¶ 19 Under § 402A, strict liability applies equally well to cases involving manufacturing defects, design defects, and failures to warn. James A. Henderson, Jr. & Aaron D. Twerski, Doctrinal Collapse in Products Liability: The Empty Shell of Failure To Warn, 65 N.Y.U. L.Rev. 265, 271 (1990). Professors Henderson and Twerski note that while the text of § 402A does not explicitly state that it applies to design and warning claims, its comments, especially comments h, i, j, k, and p, make clear that the drafters intended that result.[7]Henderson & Twerski, supra, at 271 n. 21.
¶ 20 We have found it inaccurate to speak of a properly manufactured but necessarily dangerous product as being in a "defective" condition. See Little, 92 Wash.2d at 121, 594 P.2d 911 (analyzing and rejecting language of comment h that says where a defendant has failed to give adequate warning of a danger, "`a product sold without such warning is in a defective condition.'"). Instead of defective, *135 we find it more appropriate to describe a product bearing an inadequate warning as "unreasonably dangerous." This description is congruous with comment j, which says that "[i]n order to prevent the product from being unreasonably dangerous [even though faultlessly made], the seller may be required to give directions or warning, on the container, as to its use." (Emphasis added.)
¶ 21 We have further rejected the language in comment h that suggests a duty on the part of the seller to provide warnings as imposing a negligence principle upon the doctrine of strict liability. Little, 92 Wash.2d at 121, 594 P.2d 911. We have not, however, consistently maintained a clear distinction between strict liability and negligence theories in the failure to warn context. See, e.g., Teagle v. Fischer & Porter Co., 89 Wash.2d 149, 156, 570 P.2d 438 (1977) (decided under strict liability theory of § 402A, but referring to manufacturer's "duty to warn" users). This blurring of doctrines is poignantly apparent throughout the Court of Appeals' strict liability analysis, which frequently and without distinction refers to the "duty to warn." Simonetta, 137 Wash.App. at 27-32, 151 P.3d 1019.
¶ 22 Although the theories are similar in certain contexts, distinctions exist. We recognize strict liability as a theory that may or may not be asserted alongside negligence in the failure to warn context and emphasize the contrast in analytical focus between the theories: in a negligence action, the focus is on the conduct of the defendant; in a strict liability action, the focus is on the product itself and the reasonable expectations of the user. Under strict liability, a product is not reasonably safe when it is unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer.
¶ 23 Here, it is not disputed that Viad provided no warnings of the hazards of asbestos exposure. Nor is it disputed that the evaporator itself functioned as designed. Thus, we must determine whether reasonable persons could conclude only that the evaporator was not reasonably safe when it was sold without a warning of the dangers of asbestos exposure.
¶ 24 In Little, the plaintiff sued for damages under negligence and strict liability theories, based on a solvent supplier's alleged failure to give adequate warning of the dangers involved in the use of the solvent. Little, 92 Wash.2d 118, 594 P.2d 911. We separated the theories of recovery and noted that if "negligent supplier" was proved, "inadequate warning" could generally be inferred and vice versa. We found, however, that proof of an inadequate warning will usually be a much simpler task for the plaintiff than proof of the negligence of the defendant.
¶ 25 Simonetta argues that proper use of the evaporator necessarily involved use of asbestos insulation, which resulted in his exposure to respirable asbestos. Thus, the evaporator itself was unreasonably dangerous without warnings. These warnings, Simonetta asserts, would have addressed the manner in which to use the evaporator safely, i.e., warning of the foreseeable dangers of respirable asbestos. He cites to Galvan v. Prosser Packers, Inc., 83 Wash.2d 690, 693-94, 521 P.2d 929 (1974) to argue that foreseeability of the use of the product is an element of strict liability. A close reading of Galvan, however, reveals that it does not support this argument.
¶ 26 In Galvan, the plaintiff slipped when he was operating a tractor, fell backward, and caught his foot in an unguarded corn harvester manufactured by the defendant. Galvan asserted under a theory of strict liability that the open construction of the corn harvester caused his injury and rendered its design defective and unreasonably dangerous. Unlike Simonetta, Galvan did not claim the corn harvester itself lacked adequate warning.
¶ 27 Galvan objected to a jury instruction that defined "proximate cause" in terms of what might have been foreseen by a man of ordinary prudence and intelligence. We found that this definition was too broad and that the focus in proximate cause analysis was rather on the foreseeable use of the product. Use of the corn harvester in conjunction with the tractor was foreseeable. It was not the tractor, however, but the design defect in the corn harvester that Galvan *136 claimed was the proximate cause of his injury. Similarly, in this case, it was not the evaporator, but the dangers inherent in the asbestos insulation, a product Viad did not manufacture or supply, that was the proximate cause of Simonetta's alleged injury. Case law supports the conclusion that there is no strict liability for failure to warn of the dangers inherent in another product. Therefore, as we discussed above, under negligence theory, we likewise hold that foreseeability has no bearing on the question of adequacy of warnings in these circumstances.
¶ 28 Simonetta also cites to Teagle v. Fischer & Porter Co., 89 Wash.2d 149, 570 P.2d 438 (1977), for the proposition that under § 402A, a manufacturer may be strictly liable for failure to warn of the dangers of using its product in conjunction with another product the manufacturer did not sell, supply, or recommend. In Teagle, plaintiff was injured when a "flowrator," a device used to measure liquids in the production of fertilizer, exploded, sending ammonia into plaintiff's eyes. The flowrator did not contain a warning that when measuring liquids at high pressures, operators should take protective measures due to the risk of breakage. The trial court's conclusion that the flowrator was not reasonably safe was based on several reasons, most relevantly, that the manufacturer, Fischer & Porter, failed to warn users to take precautions when measuring liquids above a certain pressure. We affirmed the trial court, holding that in addition to failing to warn about such danger, the manufacturer failed to warn of the danger of using "Viton O-rings," a product Fischer & Porter did not manufacture but that was used on the flowrator at issue and, later tests revealed, possibly caused the glass tube to break. Simonetta highlights portions of our opinion where we state that "[Fischer & Porter] knew that Viton O-rings were incompatible with ammonia, yet it did nothing more than recommend the use of Buna O-rings. It did not warn of the dangers which could result from using Viton O-rings with ammonia. The lack of this warning, by itself, would render the flowrator unsafe." Teagle, 89 Wash.2d at 156, 570 P.2d 438.
¶ 29 This portion of the analysis in Teagle was tangential, in that the trial court found the flowrator was not reasonably safe absent warning of the danger of measuring liquids at high pressures without taking precautions. That reasoning alone was the basis of the trial court's grant of summary judgment on the issue of inadequate warning. Thus, any additional analysis of Viton O-rings in Teagle was not central to the holding. We find, nonetheless, that this analysis supports the principle that where a product is only safe when specified parts are used, yet no specifications are given, strict liability for failure to warn may attach. Even so, this analysis does not apply in this case because the evaporator did not require specialized parts.
¶ 30 The Court of Appeals also distinguished Lockwood, 44 Wash.App. 330, 722 P.2d 826, stating that while the issue there was the identity of the asbestos manufacturer, here, there is no similar identity question. However, Lockwood, like many Washington cases discussing § 402A, supports the more general proposition that claims for inadequate warnings of dangers of a product are limited to those in the chain of distribution of the product, manufacturers being one such party. See, e.g., Haysom v. Coleman Lantern Co., 89 Wash.2d 474, 573 P.2d 785 (1978) (upholding trial court's finding that a factual question was presented as to whether defendant manufacturer of a stove was strictly liable for alleged inadequate warnings of dangers incident to use of stove); Terhune v. A.H. Robins Co., 90 Wash.2d 9, 577 P.2d 975 (1978) (holding manufacturer of intrauterine contraceptive, deemed an "unavoidably unsafe product" under § 402A cmt. k, could not be strictly liable, having provided adequate warnings of hazards of use to physician who prescribed it); Kimble v. Waste Sys. Int'l, Inc., 23 Wash.App. 331, 595 P.2d 569 (1979) (finding, in strict liability action against garbage truck manufacturer, that jury instruction on adequate warning was not reversible error because truck was reasonably safe without warnings); Haugen v. Minn. Mining & Mfg. Co., 15 Wash.App. 379, 550 P.2d 71 (1976) (finding sufficient evidence to support instruction on warning requirement of dangers *137 of grinding discs in strict liability action against grinding disc manufacturer).
¶ 31 A case from California involves facts similar to the present case. See Wright v. Stang Mfg. Co., 54 Cal.App.4th 1218, 63 Cal.Rptr.2d 422 (1997). In Wright, plaintiff was employed by a fire department and was injured when a deck gun manufactured by defendant broke loose from its assembly. The Wright court concluded that defendant manufacturer could be strictly liable for failure to warn of the potential dangers of foreseeable mismatch of the deck gun with component parts it did not manufacture or provide. The deck gun manufacturer knew that if its product was combined with improper component parts, use of the assembly could result in injury.
¶ 32 We find Wright to be distinguishable. First, the Wright court engaged in a component part analysis. The court found that mismatch and corrosion of the components the deck gun and attachmentsresulted in the entire assembly failing under water pressure and causing injury. Here, as noted above, we find it unnecessary to engage in a component part analysis and find that under common law, because the evaporator itself operated as designed and Viad was not the manufacturer of the asbestos insulation, Viad cannot be strictly liable for failure to warn. We base this distinction on the fact that the evaporator functioned as intended, whereas an entire assembly in Wright failed under water pressure. Second, the rule of strict liability applied in Wright requires a defendant to adequately warn of known or knowable risk. We reject this portion of the Wright analysis and conclude that even if Viad knew its evaporator was being used in conjunction with asbestos insulation, our precedent does not support extending strict liability for failure to warn to those outside the chain of distribution of a product.
¶ 33 Furthermore, Simonetta cites to Stapleton v. Kawasaki Heavy Industries, 608 F.2d 571 (5th Cir.1979). In Stapleton, plaintiff's son tipped over a Kawasaki motorcycle, and because the fuel switch had not been turned off, gasoline leaked from the tank and was ignited by the pilot light in an adjacent heater, causing fire damage to plaintiff's home. Plaintiff sued Kawasaki under theories including failure to warn about the dangerous nature of the motorcycle's fuel switch. Simonetta argues that the asbestos insulation is analogous to the gasoline, which was a product Kawasaki neither manufactured nor supplied, but was an integral addition that rendered the motorcycle dangerous without adequate warning of the potential hazards of gasoline. Rather than a warning of the hazards of gasoline, however, the inquiry in Stapleton centered on the dangerous nature of the fuel switch: the jury could find negligence or strict liability in failure to warn of the motorcycle's "unsafe design feature"; leaving the fuel switch on would allow gasoline to spill from the tank when tilted to the left or right. Here, in contrast, there is no claim that the evaporator itself contained an unsafe design feature. Thus, Stapleton is distinguishable.
¶ 34 Viad and amici curiae rely on numerous cases from other jurisdictions that support the rule that strict liability does not require a manufacturer to warn of the hazards of another product. See Garman v. Magic Chef, Inc., 117 Cal.App.3d 634, 173 Cal.Rptr. 20 (1981) (finding it "semantic nonsense" to say that absence of a warning to check for gas leaks in other products makes a physically nondefective stove defective); Baughman v. Gen. Motors Corp., 780 F.2d 1131 (4th Cir.1986) (rejecting claim that GMC truck was defective because of inadequate warnings of dangers associated with multi-piece wheel rims, and finding under statute adopting § 402A, manufacturer of replacement component part causing injury would be liable for failure to warn); In re Thrombosis, 356 F.Supp.2d at 1063 (finding Boeing not liable under § 402A for defective seats it did not manufacture or install, which caused deep vein thrombosis in passengers: "Boeing sold its "completed product" (an aircraft with no seats) to the airlines with no defective condition").
¶ 35 Of the many cases cited from other jurisdictions, Lindstrom v. A-C Product Liability Trust, 424 F.3d 488 (6th Cir.2005), is most factually similar. In Lindstrom, plaintiff was diagnosed with mesothelioma, believed to be caused by asbestos exposure. *138 Under theories of negligence and strict liability, Lindstrom sued several manufacturers of products used in conjunction with other manufacturers' asbestos products. Though the central issue in Lindstrom was causation as it related to component parts and not the existence of a duty, the court found no causation because it concluded that a manufacturer cannot be held responsible for the asbestos contained in another product. Lindstrom, 424 F.3d at 496. For example, the Lindstrom court affirmed summary judgment for pump manufacturer CoffinTurbo, who did not manufacture or supply the asbestos products used to insulate its pumps. The court found Coffin Turbo could not be held responsible for the asbestos contained in another product, though they were attached to a Coffin Turbo product. Lindstrom, 424 F.3d at 496. It was those asbestos products, not Coffin Turbo's pumps, that caused injury. The same is true here.
¶ 36 It is undisputed that Viad sold the evaporator without insulation and that it did not manufacture, sell, or select the asbestos insulation. Therefore, the completed product was the evaporator as delivered by Viad to the navy, sans asbestos insulation. Under § 402A, strict liability attaches when a manufacturer sells an unreasonably dangerous product. Like the court in Lindstrom, we conclude that the unreasonably dangerous product in this case was the asbestos insulation. And as in Lindstrom, we find Viad cannot be held responsible for the asbestos contained in another manufacturer's product.[8]
¶ 37 Because Viad was not in the chain of distribution of the dangerous product, we conclude not only that it had no duty to warn under negligence, but also that it cannot be strictly liable for failure to warn. That is, reasonable persons could conclude only that the evaporator was reasonably safe when it was sold without a warning of the dangers of asbestos exposure. We reverse the Court of Appeals on the question of strict liability.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, BARBARA A. MADSEN, SUSAN OWENS, MARY E. FAIRHURST, and JAMES M. JOHNSON, Justices.
STEPHENS, J. (dissenting).
¶ 38 Under Washington common law, a product manufacturer owes a duty sounding in both negligence and strict liability to warn of hazards involved in the use of its product. Here, the use of Viad Corporation's evaporator[1] required insulation, which in the 1950s in navy distilling units, was asbestos-containing insulation. Routine maintenance of the evaporator exposed users to aspirable asbestos. Thus, the simple answer to the question of whether Viad owed Joseph Simonetta a duty in this case is yes. That the majority *139 requires over 30 pages to answer no is telling. Its extended discussion of the ersatz duty "to warn of the hazards of another manufacturer's product," majority at 2, obscures the issue and introduces confusion into otherwise settled product liability law. Because I conclude that the Court of Appeals correctly recognized Viad owed Simonetta a duty to warn under both negligence and strict liability principles, I respectfully dissent.

Analysis
¶ 39 Recognition of Viad's duty in this case follows from the application of settled legal principles to this new set of facts. The law that controls, Restatement (Second) of Torts §§ 388 (negligence) and 402A (strict liability) (1965), contemplates the scenario presented here, where the danger to users arises from the anticipated use of the product.
¶ 40 Negligence: Under the Restatement (Second) of Torts § 388 (§ 388), a product manufacturer owes a duty to warn of hazards involved in the use of its product, which are known or should be known to the manufacturer and are not obvious to the user. Fleming v. Stoddard Wendle Motor Co., 70 Wash.2d 465, 467-68, 423 P.2d 926 (1967) (adopting § 388). Our courts interpret this section to mean that a manufacturer has a duty to warn about the dangers associated with a product's intended and potential uses. Haysom v. Coleman Lantern Co., 89 Wash.2d 474, 478, 573 P.2d 785 (1978) ("Washington has for many years recognized the common-law negligence principle that a manufacturer is under a duty to warn consumers of hazards associated with the use of potentially dangerous products."); Novak v. Piggly Wiggly Puget Sound Co., 22 Wash. App. 407, 412, 591 P.2d 791 (1979) ("A manufacturer can also be found negligent for failure to give adequate warning of the hazards involved in the use of the product which are known, or in the exercise of reasonable care should have been known, to the manufacturer."); Lockwood v. AC & S, Inc., 44 Wash. App. 330, 339, 722 P.2d 826 (1986) ("The manufacturer's knowledge of its product and the foreseeability of the dangers latent in that product or in its intended and potential uses is the relevant inquiry in order to determine the reasonableness of the manufacturer's conduct in failing to give, or in giving, the warning that it did."), aff'd, 109 Wash.2d 235, 744 P.2d 605 (1987).[2]
¶ 41 Here, the product supplied was an evaporator, and its function was to evaporate seawater and convert it into fresh water, as part of a distilling unit. Evidence before the trial court was that the evaporator could not function without insulation. Although Viad did not sell the evaporator with the insulation already attached, the trial court recognized that the manufacturer "knew or reasonably should have known that its product would be insulated with asbestos-containing material." Clerk's Papers (CP) at 1229. Indeed, a defense expert testified that "everyone involved with the sale of distilling units would know that asbestos-containing insulation would be used by the United States Navy on the exterior of a distilling plant." CP at 744. Routine maintenance of the evaporator required the removal and replacement of the asbestos insulation every three to six months, as evidenced by instructions in Viad's product manual. And, evidence before the trial court suggested that Viad knew of the harmful effects of asbestos.
¶ 42 Based on this record, Simonetta presented sufficient evidence of a duty to warn under § 388 to withstand a summary judgment motion. The Court of Appeals properly concluded that this result follows from an *140 application of the common law to these particular facts. Simonetta v. Viad Corp., 137 Wash.App. 15, 25, 151 P.3d 1019 (2007).
¶ 43 Viad insists that existing law does not recognize a duty because any danger posed to Simonetta was not caused by its product, but rather by asbestos insulation that it did not manufacture. But, the focus under § 388 is on dangers involved in the use of a product. Simply put, the duty to warn contemplates that a product will actually be used. The hazard of exposure to aspirable asbestos was integral to the ability to use Viad's evaporator, given that the unit could not function without insulation and service of the unit required periodic removal and replacement of the necessary insulation. Viad's argument, accepted by the majority, imagines that we are dealing with a perfect platonic form of an evaporator rather than the functional product. Once a manufacturer releases a product for use, its duty of reasonable care under negligence law includes "a duty to warn of hazards involved in the use of a product which are or should be known to the manufacturer." Reichelt v. Johns-Manville Corp., 107 Wash.2d 761, 772, 733 P.2d 530 (1987).
¶ 44 We have never limited a manufacturer's duty by requiring that harm be inflicted by the product itself, as opposed to a hazard arising from its use. To the contrary, we have recognized a duty to warn even when the immediate cause of injury was something other than the product itselfincluding another manufacturer's product. See, e.g., Teagle v. Fischer & Porter Co., 89 Wash.2d 149, 155, 570 P.2d 438 (1977) (plaintiff injured while using defendant's product when "Viton O-ring," not manufactured by defendant, failed); Haysom, 89 Wash.2d 474, 573 P.2d 785 (plaintiff injured while using defendant's camp stove when stove fuel ignited); see also Bich v. Gen. Elec. Co., 27 Wash.App. 25, 33, 614 P.2d 1323 (1980) (plaintiff injured when another manufacturer's fuse was used in General Electric's transformer, which contained no warning about using another's fuse). These cases make clear that the duty to warn is not limited to physical properties of the product at issue, as the majority suggests, but includes hazards arising from the anticipated use of the product under particular circumstances.
¶ 45 Teagle speaks directly to this situation. There, we affirmed summary judgment in favor of the plaintiff on a theory of strict liability, concluding that reasonable persons could only find that the product at issue, a flowrater used to measure liquids in a chemical fertilizer plant, was not reasonably safe in the absence of warnings about the dangers of measuring liquids above 50 pounds per square inch and of using Viton O-rings when measuring ammonia.
¶ 46 The Court of Appeals observed that Teagle is somewhat different from this case because the flowrater itself exploded when the Viton O-ring failed. Simonetta, 137 Wash.App. at 30-31, 151 P.3d 1019. While this is a factual distinction, the analysis in Teagle did not turn on how the plaintiff was injured in terms of the direct agent of injury, but instead on the unreasonable danger posed by the flowrater in the absence of warnings, including as to the proper Viton O-rings that should have been used with the flowrater when measuring strong alkaline liquids. Teagle, 89 Wash.2d at 155-56, 570 P.2d 438. In fact, the product itself was not the direct agent of injury; rather, injury was due to the ammonia that was sent into the plaintiff's eyes during the explosion. Id. at 151, 570 P.2d 438. The majority's dismissal of Teagle is tenuous. Recognizing, as it must, our conclusion in Teagle that "[t]he lack of this warning [not to use Viton O-rings], by itself, would render the flowrater unsafe," 89 Wash.2d at 156, 570 P.2d 438, the majority suggests this portion of our opinion was "tangential" and not "central to the holding." Majority at 136. Yet, we plainly held that the duty to warn encompassed both of the dangers involved in the use of the flowrater. Teagle, 89 Wash.2d at 155-56, 570 P.2d 438. Consistent with Teagle's focus on the use of the product, Viad owed a duty to warn of the dangers posed by the necessary insulation that allowed the evaporator to be used as intended.[3]
*141 ¶ 47 Ultimately, the majority rejects the existence of a duty under § 388 and distinguishes the case law cited above by redefining the product at issue, insisting it is the asbestos insulation, rather than the evaporator. Of course, Viad neither manufactured nor supplied the asbestos insulation. For the majority, this is a crucial fact because the "duty to warn [under § 388] is limited to those in the chain of distribution of the hazardous product." Majority at 133. This entire discussion of the chain of distribution, which is the core of the majority's negligence analysis, is unnecessary. The product at issue is Viad's evaporator, not the insulation, just as the product at issue in Teagle was the flowrater, not the Viton O-ring or the ammonia. When the evaporator is properly the focus of the inquiry under § 388, the majority's arguments regarding the chain of distribution have little relevance. It is undisputed that the evaporator was in Viad's chain of distribution.[4]
¶ 48 The majority appears to accept Viad's plea that if this court acknowledges a duty to warn here, the result will be unchecked liability for manufacturers who fail to warn about the products of others that may be used in conjunction with their own. For example, Viad asserts that were this court to hold that it had a duty to warn about the evaporator's use with asbestos insulation, then orange juice producers must warn about the dangers of mixing their product with vodka. Suppl. Br. of Resp't at 19. The fallacy here is in disregarding the importance under a § 388 analysis of the manufacturer's knowledge of how its product will be used. Viad owes a duty to warn not because asbestos insulation might happen to be used in conjunction with its evaporator, but because such insulation was known to be necessary for the evaporator to function. See Lockwood, 44 Wash.App. at 339, 722 P.2d 826 (noting duty to warn extends to hazards involved in intended and potential uses of product). Recognizing a duty in this instance will not broaden the duty of manufacturers to anticipate and warn of every conceivable use of their products. Instead, it is consistent with settled negligence law that imposes a duty to warn of "the hazards involved in reasonably foreseeable uses of the product." Lockwood, 109 Wash.2d at 252, 744 P.2d 605.
¶ 49 Strict Liability: Imposition of a duty under the common law theory of strict liability follows similar reasoning as under a negligence analysis. Section 402A of the Restatement (Second) of Torts instructs that a product is unreasonably dangerous if, though faultlessly designed, it lacks adequate warning of the dangers inherent in its use, which are not obvious or known to the user. Restatement (Second) of Torts § 402A (§ 402A) cmts. h, j; Little v. PPG Indus., Inc., 92 Wash.2d 118, 120-21, 594 P.2d 911 (1979) (rejecting comment h's designation of a product as "defective" where warnings are inadequate in favor of comment j's designation of the product as "unreasonably dangerous"). "Strict liability may be established if a product, though faultlessly manufactured, is unreasonably dangerous when placed in the hands of the ultimate user by a manufacturer without giving adequate warnings concerning the manner in which to use it safely." Baughn v. Honda Motor Co., 107 Wash.2d 127, 137, 727 P.2d 655 (1986) (emphasis added); see also Terhune v. A.H. Robins Co., 90 Wash.2d 9, 12, 577 P.2d 975 (1978) (same); Teagle, 89 Wash.2d at 155, 570 P.2d 438 (same). The focus of strict *142 liability is on the adequacy of the warning itself and the reasonable expectations of the user, rather than upon the defendant's conduct. Little, 92 Wash.2d at 122, 594 P.2d 911. The foreseeability of harm is not an element of a strict liability warning claim. Lockwood, 109 Wash.2d at 254, 744 P.2d 605. The use of the product, however, must be foreseeable. Galvan v. Prosser Packers, Inc., 83 Wash.2d 690, 693-94, 521 P.2d 929 (1974) (noting that the use of the product, which gave rise to injury, must be one that is foreseeable to the manufacturer).[5]
¶ 50 Rather than addressing the facts of this case according to the standard for strict liability under § 402A, the majority again shifts focus to the wrong product, suggesting that the Court of Appeals' decision holds Viad strictly liable for defects in asbestos products made by another. Majority at 135. But Viad's duty under § 402A, as under a negligence theory, is to warn of hazards associated with the use of its own product, the evaporator.[6] The majority drifts away from the appropriate inquiry under § 402A when it states that the evaporator functioned as designed and suggests that "the dangers inherent in the asbestos insulation, a product Viad did not manufacture or supply, that was the proximate cause of Simonetta's alleged injury." Majority at 136. It then places primary reliance on a case that involved the issue of causation, not duty, and did not discuss a failure to warn claim at all. Majority at 137-38 (discussing Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488 (6th Cir. 2005)).
¶ 51 Whether the evaporator functioned as designed is not the issue, of course, as a product may be unreasonably dangerous in the absence of adequate warnings notwithstanding that it is not itself "defective." Little, 92 Wash.2d at 120-21, 594 P.2d 911. Nor is it accurate to speak of "the" proximate cause of Simonetta's injury being another entity's product. There may be multiple proximate causes of an injury, so the fact that the asbestos manufacturers' failure to warn also caused Simonetta's injury has no bearing on whether Viad owed a duty.[7]
¶ 52 Instead, the focus of the inquiry under § 402A is on the warnings required to make the evaporator reasonably safe, including what a reasonable user would expect to be *143 told about the dangers inherent in the use of the evaporator. Lockwood, 109 Wash.2d at 254, 744 P.2d 605. This inquiry does not allow for the artificial segregation of the evaporator from the asbestos insulation that Simonetta necessarily encountered in order to use the product. Viad does not suggest that Simonetta's maintenance of the evaporator was not a foreseeable use. Thus, the question is simply whether the risk of exposure to aspirable asbestos during required maintenance of the evaporator is a risk inherent in the use of the product. Based on the record in this case, the Court of Appeals properly concluded that it is. I would affirm that conclusion and recognize a duty here.

CONCLUSION
¶ 53 While this case presents a new set of facts from others we have considered, it requires no unprecedented expansion of the law to recognize a duty here. In deciding whether a duty is owed under a negligence theory, we look to logic, common sense, justice, policy, and precedent. Christensen v. Royal Sch. Dist. No. 160, 156 Wash.2d 62, 67, 124 P.3d 283 (2005) (quoting Snyder v. Med. Serv. Corp. 145 Wash.2d 233, 243, 35 P.3d 1158 (2001)). Here, all of these considerations suggest that Viad owed a duty of care to Simonetta. Our precedent interpreting § 388 compels this conclusion. If Viad can show that it did not breach its duty to warn, or that any breach was not a proximate cause of Simonetta's injury, then it will and should avoid liability. But to hold that it had no duty to warn of a serious hazard it knew or should have known was involved in the use of its product ignores logic, common sense, and justice.
¶ 54 Similarly, a duty arises under strict liability when a product, though not defective in itself, is unreasonably dangerous for use in the absence of adequate warnings as to its inherent risks. The paramount policy goal of strict liability is to place the cost of protecting product users on those in a better position to offer that protection. § 402A cmt. c. Joseph Simonetta had an expectation that he would be warned of potential dangers associated with Viad's evaporator, and Viad was in a superior position to offer warnings about the dangers involved in the use of its product. While it is certainly true that the asbestos manufacturers also could have warned about the dangers of their insulation, this does not negate Viad's duty.
¶ 55 I would hold that Simonetta established a prima facie case of negligence and strict liability against Viad and that his claims should proceed to trial. Accordingly, I dissent.
WE CONCUR: RICHARD B. SANDERS and TOM CHAMBERS, Justices.
NOTES
[1] Viad disputes whether it is Griscom Russell's successor in interest, but that relationship is assumed for purposes of appeal. For simplicity, we refer only to Viad throughout this opinion.
[2] Though, in his appellate briefing, Simonetta refers to testimony that the gaskets in the Viad evaporator contained asbestos, in a motion for voluntary dismissal filed in trial court, Simonetta moved to dismiss all claims that remained operative after the trial court's partial grant of summary judgment. This included voluntary dismissal of the claim against Viad for "exposure to asbestos containing gaskets incorporated into [Viad] manufactured equipment." CP at 1375. Because this claim was dismissed and Viad's petition for review addressed only the asbestos insulation, our analysis is limited to the asbestos insulation.
[3] With reference to the duty to disclose, the law recognized in Washington is the Restatement (Second) of Torts § 388 (1965), which states:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous. Fleming v. Stoddard Wendle Motor Co., 70 Wash.2d 465, 467-68, 423 P.2d 926 (1967). To have a claim under § 388, a party must satisfy all three subsections(a), (b), and (c).
[4] Simonetta and amicus curiae Schroeter Goldmark & Bender argue foreseeability is relevant to determining the existence of a duty. In his briefing to the Court of Appeals, Simonetta argued that foreseeability of the injury created the duty to warn. This argument was squarely rejected in the Court of Appeals opinion: "Foreseeability does not create a duty but sets limits once a duty is established." Simonetta, 137 Wash.App. at 23 n. 2, 151 P.3d 1019. Once this initial determination of legal duty is made, the jury's function is to decide the foreseeable range of danger therefore limiting the scope of that duty. We agree with the Court of Appeals' finding on this point and focus our analysis on the duty to warn as part of the reasonable care inquiry. Restatement (Second) of Torts § 388(c).
[5] We decline to determine whether the evaporator and/or asbestos insulation may be classified as "component parts," a term included in the definition of a "product" under RCW 7.72.010(3). This has no bearing on the conclusion that common law imposes the duty to warn of the hazards of a product only on parties in the chain of distribution of the hazardous product.
[6] Section 402A reads as follows:

Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
[7] Comments i, k, and p relate to design claims, and comments h and j relate to warning claims. Comment h states in relevant part: "A product is not in a defective condition when it is safe for normal handling and consumption.... Where, however, [the seller] has reason to anticipate that danger may result from a particular use, ... he may be required to give adequate warning of the danger (see comment j), and a product sold without such warning is in a defective condition." Comment j states in relevant part: "Directions or warning. In order to prevent the product from being unreasonably dangerous [even though faultlessly made], the seller may be required to give directions or warning, on the container, as to its use."
[8] Such a finding is supported by the policies underlying imposition of strict liability:

On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.
Restatement (Second) of Torts § 402A cmt. c. None of these interests support imposing strict liability on Viad, who had no control over the type of insulation the navy would choose and derived no revenue from sales of asbestos-containing products. See Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 582 N.Y.S.2d 373, 591 N.E.2d 222 (1992) (holding tire manufacturer Goodyear not required to warn about inherent dangers in another manufacturer's multi-piece rim when Goodyear produced a sound product compatible for use with 24 different models of rims; Goodyear had no control over the production of the rim, had no role in placing the rim in the stream of commerce, and derived no benefit from its sale).
[1] I refer to the evaporator as Viad's product for simplicity, as Viad's status as successor in interest to Griscom Russell, the manufacturer of the evaporator, is assumed for purposes of this appeal.
[2] There is much discussion in the parties' briefing and the majority opinion of the role of foreseeability. The Court of Appeals below and in the companion case of Braaten v. Saberhagen Holdings, 137 Wash.App. 32, 151 P.3d 1010 (2007), correctly observed that the foreseeability of injury does not give rise to a duty in the first instance but sets the parameters of the duty once imposed. Simonetta v. Viad Corp., 137 Wash. App. 15, 23 n. 2, 151 P.3d 1019 (2007); Braaten, 137 Wash.App. at 48, 151 P.3d 1010. Insofar as the question involves a product manufacturer's knowledge of the hazards posed by its product, foreseeability of harm is generally a question for the trier of fact. McLeod v. Grant County Sch. Dist. No. 128, 42 Wash.2d 316, 323, 255 P.2d 360 (1953). As noted below, foreseeability of harm should not be confused with foreseeability of the use of a product, which is an element of both a negligence and strict liability claim. Galvan v. Prosser Packers, Inc., 83 Wash.2d 690, 521 P.2d 929 (1974).
[3] The majority further argues that Teagle does not apply here because the flowrater required "specialized parts," while Viad's evaporator did not. Majority at 136. The basis for this factual assertion is unclear, as Viad has not made this argument and the majority does not identify portions of the record to support it. The evidence before the trial court was that the evaporator required insulation sufficient to withstand extremely high temperatures and that Viad knew or should have known that the insulation that would meet this requirement contained asbestos.
[4] The one aspect of the majority's negligence analysis that does not concern the "chain of distribution" addresses Sepulveda-Esquivel v. Central Machine Works, Inc., 120 Wash.App. 12, 84 P.3d 895 (2004), upon which Viad relies. As the majority acknowledges, Sepulveda involves the liability of a component part seller under the Washington product liability act, chapter 7.72 RCW, and reflects the general rule that such sellers are not liable unless the component part itself is defective. Sepulveda, 120 Wash.App. at 19, 84 P.3d 895. There is no argument in this case that the evaporator is merely a component of another's productcertainly it is not a component of the asbestos insulation that the majority mistakenly identifies as the product at issue. Sepulveda does not support Viad's argument.
[5] The majority states that we have not consistently maintained a clear distinction between strict liability and negligence in the failure to warn context. Majority at 19. It criticizes the Court of Appeals for blurring the line between these two doctrines by use of the phrase "`duty to warn.'" Id. at 20, 84 P.3d 895 (quoting Teagle, 89 Wash.2d at 156, 570 P.2d 438). Such criticism is unwarranted, as the Court of Appeals accurately stated the law under § 402A. I am more troubled that the majority cites two relatively early cases involving negligence and strict liability theories as evidence of our asserted confusion, without acknowledging that we subsequently clarified the distinction between these two theories. See Lockwood, 109 Wash.2d at 251-52, 254, 744 P.2d 605; Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 759-63, 818 P.2d 1337 (1991). The excellent Court of Appeals opinion in Lockwood explains that while negligence considers the defendant's conduct by asking what it knew or should have known about hazards involved in the use of its product, under strict liability, focus is on the product itself, and it is immaterial whether the unwarned danger, which rendered the product unreasonably dangerous, was known or knowable at the time the product was sold. Lockwood, 44 Wash.App. at 346-48, 722 P.2d 826. My concern is that by suggesting there is confusion, the majority opinion will reintroduce confusion.
[6] Because the relevant product is the evaporator, not asbestos, the majority's recurrent reference to the chain of distribution in its strict liability discussion is also unnecessary.
[7] This entire portion of the majority's discussion seems at odds with the procedural posture of this case, which involves only the question of duty on Viad's motion for summary judgment. The majority at one point suggests Simonetta must prove he is entitled to judgment as a matter of law. Majority at 135 ("Thus, we must determine whether reasonable persons could only conclude that the evaporator was not reasonably safe when it was sold without a warning of the dangers of asbestos exposure."). Then, it purports to address the adequacy of the warnings. Majority at 136 ("[W]e likewise hold that foreseeability has no bearing on the question of adequacy of warnings in these circumstances."). Finally, the majority reaches beyond the scope of the limited summary judgment motion before us and holds that Viad's evaporator was reasonably safe. Majority at 138. We should limit our consideration to the issue of duty that is presented. Because I would hold merely that Viad was not entitled to summary judgment on the issue of duty, I would leave for trial the resolution of the other elements of Simonetta's negligence and strict liability claims.