PREGERSON, Circuit Judge,
dissenting:
In this case, the use of a dangerous consumer product, a Powermate 5045 heater, led to the deaths of two people. After Coleman began to sell the Powermate 5045, Coleman learned that the product’s safety features and warnings were inadequate to protect consumers, some of whom died. In such circumstances, I cannot agree with the majority that as a matter of “logic, common sense, justice, [and] policy,” Coleman bore no post-sale duty to warn consumers of heightened dangers associated with the Powermate 5045. Simonetta v. Viad Corp., 165 Wash.2d 341, 197 P.3d 127, 131 (2008) (en banc).
This appeal arises out of a suit filed by Mari Daniel, the widow of Melvin Daniel and daughter of the late Fred Ramiskey. During a family trip in 2006, Ramiskey, Melvin Daniel, and Robert Haney, a Chief Warrant Officer in the United States Army, used a Coleman Powermate 5045 heater to stay warm at night. Before he went to bed, Haney set the heater to its lowest setting and left the window of his twenty-five foot camper slightly open. Haney awoke to find Ramiskey and Daniel dead from carbon monoxide poisoning. Haney himself was hospitalized, but survived. Roughly two months after the tragedy, Haney was deployed to Iraq.
The majority asserts that Coleman bore no post-sale duty to warn consumers of the risks associated with the Powermate 5045 because one risk — that of death — already existed, and was warned of, at the time of sale. Such a conclusion subverts Washington law, which requires that “where a manufacturer learned ... about a danger connected with the product after it was manufactured^] ... the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger....” Wash. Rev.Code § 7.72.030(l)(c). Similarly, the Restatement of Torts provides that a reasonable seller would provide a warning after the time of sale if “the seller knows or reasonably should know that the product poses a substantial risk of harm to persons” and “the risk of harm is sufficiently great to justify the burden of providing a warning.” Restatement (Third) of ToRs: Product Liability § 10(b).
That the potential result-death — was present both before and after Coleman sold the Powermate 5045 does not mean, as the majority believes, that no appreciable new risk or danger of death arose after the time the product was put on the market. This erroneous conclusion stems from the majority’s conflation of risk and result. A risk, however, is the “unceRainty of a result, happening, or loss; the chance of injury, damage or loss; especially], the existence and extent of the possibility of harm”. Black’s Law Dictionary 1442 (9th ed.2009) (emphasis added). In the ease before us, Coleman manufactured and sold a product with the belief that the product carried with it a certain risk, or chance, of harm. Later, after the time the product was sold and put on the *1050-1054 market, Coleman learned that the Power-mate 5045’s safety features and warnings were inadequate to protect consumers from a risk that was far greater than the company first believed to exist. Consumers kept dying. Once Coleman obtained this new knowledge of the heightened risk, I would hold that, as a matter of law, the company bore a post-sale duty to warn consumers of the newly perceived risk.[1]
I would also hold that the district court abused its discretion by excluding evidence of accidents involving other models of Coleman propane heaters. According to a Consumer Products Safety Commission report, these accidents resulted in fifty-eight carbon monoxide deaths. Nevertheless, the district court ruled that the other incidents were not substantially similar to the incident at issue here because the other heaters bore different labels than the Powermate 5045. “The ‘substantially similar’ predicate for the proof of similar accidents is defined ... by the defect ... at issue.” Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1083 (5th Cir.1986), cited with approval by Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1105 (9th Cir.1991). The alleged defect at issue here is excess production of carbon monoxide. The Powermate 5045 and the other heaters all suffered from this same defect. Furthermore, some of the other heaters, such as the Focus 15 and Focus 30, are visually similar to the Powermate 5045. Incidents involving other heaters were therefore substantially similar to the incident involving the Powermante 5045 here. Evidence of those other incidents should have been admitted.
Lastly, I would hold that the district court abused its discretion by excluding a report from Mari Daniel’s expert, Gary Hutter. Hutter submitted an expert report, based in part on transcripts of Haney’s testimony. Prior to the close of discovery, Haney happened to come home on leave from Iraq. Only then was Hutter able to speak face to face with Warrant Officer Haney. After learning additional information during this in-person interview, Hutter realized that his earlier report was wrong, and attempted to submit a report correcting his earlier misunderstanding. Though the discovery period had not yet closed, and though trial would not commence for almost three months, the district court rejected Hutter’s report, and any related testimony, as untimely. In a serious case such as this one, involving a dangerous product and multiple deaths, a district court does not properly exercise its discretion when, in the name of judicial efficiency, it rejects an expert’s attempt to get the facts right.
Accordingly, I dissent.

. Because Coleman did not learn, and could not have learned, of the heightened risk until after the time of sale, this conclusion does not conflict with the jury's determination that Coleman’s time of sale warnings were adequate. See Restatement (Third) of Torts: Product Liability § 10 at comment c.