**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARI DANIEL, individually and as
the personal representative of the
Estate of Melvin Daniel and as
Guardian for the minor children,
and as the personal representative
of the Estate of Fred Ramiskey,
        *Plaintiff-Appellant,*

v.

COLEMAN COMPANY INC., a
Delaware Corporation,
        *Defendant-Appellee.*

No. 08-35592

D.C. No.
3:06-cv-05706-KLS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Karen L. Strombom, Magistrate Judge, Presiding

Argued and Submitted
August 3, 2009—Seattle, Washington

Filed March 26, 2010

Before: Harry Pregerson, John T. Noonan, Jr. and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge Pregerson

**COUNSEL**

Philip A. Talmadge, Peter Lohnes, Tukwila, Washington; Michael E. Blue, Jeffrey M. Campiche, Seattle, Washington; Patrick J. Kang, Seattle, Washington; Thomas C. Bierlein, Issaquah, Washington, for the plaintiff-appellant.

Kenneth R. Lang, Amy M. Decker, Wichita, Kansas; Keith Gerrard, Todd W. Rosencrans, Seattle, Washington, for the defendant-appellee.

**OPINION**

NOONAN, Circuit Judge:

This dispute arises from a wrongful death action initiated by Mari Daniel on behalf of her husband and her father, Melvin Daniel and Fred Ramiskey.

FACTS

In September of 2006, Robert Haney, Fred Ramiskey, and Melvin Daniel went on a hunting trip in the Chambers Lake area near Packwood, Washington, staying in Daniel's twenty-five foot camper. Haney was the owner of a Coleman Powermate 5045 heater, which was purchased in 1995. Coleman describes the Powermate 5045 as a "commercial" grade heater, and the package label identifies it as an "industrial" heater. It operates off of 20-pound or larger propane tanks and is rated at up to 45,000 Btu of heat output. The warning on the base of the heater states: "Follow instructions and Warnings to avoid fires, serious injury or death. For outdoor or well

ventilated construction use only. Never use inside house, camper, tent, vehicle or other unventilated or enclosed area." Haney had seen the warning but had not read its contents. The Powermate 5045 also includes product instructions which direct users to open the propane tank fully and to relight the heater if the flame does not glow red.

During a cold night, Haney retrieved the Powermate 5045 and, with Daniel and Ramiskey's approval, operated the heater inside of the camper for about one hour. Haney opened the window to the camper four inches while the heater was in use. Haney estimates that he operated the heater on its "high" setting for half an hour, and on its lowest setting for the remainder of the hour. These estimates were confirmed through further tests by the local sheriff detectives after the accident.

That night, Daniel and Ramiskey died of carbon monoxide poisoning. Haney survived.

## PROCEEDINGS

Marie Daniel filed this lawsuit in December of 2006, asserting wrongful death claims under Washington law. Daniel claimed that Coleman failed to provide adequate warnings at the time of manufacture. Daniel also claimed that Coleman's knowledge of other incidents involving its heaters created a post-manufacture duty to warn of the risks associated with the Powermate 5045. Finally, Daniel claimed that the heater was defectively designed because it was more dangerous than a reasonable consumer would expect, and because it lacked alternative design features which would have made the heater more safe. The district court dismissed Daniel's post-sale duty to warn claim, but allowed the other claims to proceed to trial.

During the trial, the jury heard of five other incidents in which eight people died as a result of carbon monoxide poi-

soning while using the Powermate 5045 in enclosed spaces. The court, however, did not admit other evidence of cases in which users of different Coleman heater models were killed by carbon monoxide.

The jury returned a verdict that the Coleman Powermate 5045 was reasonably safe in its design and time-of-manufacture warnings. Daniel filed a motion for a new trial on the grounds that the district court erred when it dismissed Daniel's post-sale duty to warn claim, and that several of the court's evidentiary rulings were erroneous and prejudicial. The district court rejected the motion. Daniel appeals.

## ANALYSIS

**[1]** Daniel argues that the district court erred when it failed to instruct the jury that Coleman had a post-sale duty to warn about the risk of carbon monoxide poisoning that results from operating the Powermate 5045 in "enclosed areas and . . . with the fuel flow reduced." Daniel's argument is without merit. Whether a duty to warn exists is "a question of law that generally depends on mixed considerations of logic, common sense, justice, policy, and precedent." *See Simonetta v. Viad Corp.*, 165 Wash.2d 341 (2008). Here, Daniel does not present evidence of a new and distinct danger which arose after the point of sale. The danger of carbon monoxide poisoning was known to Coleman before the sale, and the heater was sold with warnings that, if followed, would prevent carbon monoxide poisoning. The jury found that the point-of-sale warnings on the Powermate 5045 adequately covered the risk of using the heater inside a camper and at reduced fuel flow. Daniel does not contest this finding on appeal. The district court properly held that there was no post-sale duty to warn of a danger already accounted for.

**[2]** Daniel also argues that the district court erred when it precluded the admission of evidence regarding a number of carbon monoxide deaths resulting from the use of other mod-

els of Coleman heaters. According to Daniel, the evidence was admissible to prove that Coleman had knowledge or notice that its propane heaters posed a carbon monoxide danger. However, the parties stipulated during pretrial that "Coleman is aware of incidents in which consumers have allegedly operated Coleman propane radiant heaters in enclosed spaces resulting in the consumers' death from carbon monoxide poisoning." These admissions were read to the jury several times and precluded the need to introduce specific evidence of other incidents to prove notice or knowledge.

[3] Nor was the evidence likely to be admissible to prove the substance of Daniel's design defect and negligence claims. The record suggests that much of the evidence was not in admissible form. Moreover, the Powermate 5045 heaters were marked for "outdoor," "industrial," and "construction" use; they were physically larger and more powerful than the heaters involved in the other incidents; and they included different warning language relating to use in enclosed areas. The district court acted within its discretion when it referred to these factors in finding that accidents caused by Coleman's other heater models were not "substantially similar" to the accident in the present case. *See Cooper v. Firestone Tire and Rubber Co.,* 945 F.2d 1103, 1105 (9th Cir. 1991) (citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect").

[4] Daniel also disputes the district court's decision to exclude the results of several tests performed by Coleman on its indoor "camping" heater, the Focus 5, as well as evidence of a 1992 warning campaign associated with the same heater. According to Daniel, the excluded evidence would have shown that Coleman knew that its heaters generated increased levels of carbon monoxide when operated at reduced fuel flow. However, Daniel was permitted to present substantially equivalent evidence at trial to prove this very point. Several

witnesses, including two that were Coleman employees, testified that Coleman knew, from its tests in the 80s and 90s, that running a propane heater at low fuel flow could potentially produce higher levels of CO. *See* Trial Transcript at 337. Results from several of the tests mentioned were admitted as exhibits during trial. Because the evidentiary decision is unlikely to have caused Daniel substantial prejudice, the court's ruling does not constitute reversible error. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

**[5]** Daniel's final challenge is to the district court's decision, pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, to exclude a report from Daniel's expert, Hutter, on the grounds that it was untimely. We find no error in the district court's application of the Rule 37(c) sanctions. Daniel's late report sought to substantiate deposition testimony that was taken early in the discovery process. The untimeliness was neither justified nor harmless.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

PREGERSON, Circuit Judge, dissenting:

In this case, the use of a dangerous consumer product, a Powermate 5045 heater, led to the deaths of two people. After Coleman began to sell the Powermate 5045, Coleman learned that the product's safety features and warnings were inadequate to protect consumers, some of whom died. In such circumstances, I cannot agree with the majority that as a matter of "logic, common sense, justice, [and] policy," Coleman bore no post-sale duty to warn consumers of heightened dangers associated with the Powermate 5045. *Simonetta v. Viad Corp.*, 197 P.3d 127, 131 (Wash. 2008) (en banc).

This appeal arises out of a suit filed by Mari Daniel, the widow of Melvin Daniel and daughter of the late Fred

Ramiskey. During a family trip in 2006, Ramiskey, Melvin Daniel, and Robert Haney, a Chief Warrant Officer in the United States Army, used a Coleman Powermate 5045 heater to stay warm at night. Before he went to bed, Haney set the heater to its lowest setting and left the window of his twenty-five foot camper slightly open. Haney awoke to find Ramiskey and Daniel dead from carbon monoxide poisoning. Haney himself was hospitalized, but survived. Roughly two months after the tragedy, Haney was deployed to Iraq.

The majority asserts that Coleman bore no post-sale duty to warn consumers of the risks associated with the Powermate 5045 because one risk—that of death—already existed, and was warned of, at the time of sale. Such a conclusion subverts Washington law, which requires that "where a manufacturer learned . . . about a danger connected with the product after it was manufactured[,] . . . the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger . . . ." Wash. Rev. Code § 7.72.030(1)(c). Similarly, the Restatement of Torts provides that a reasonable seller would provide a warning after the time of sale if "the seller knows or reasonably should know that the product poses a substantial risk of harm to persons" and "the risk of harm is sufficiently great to justify the burden of providing a warning." *Restatement (Third) of Torts: Product Liability* § 10(b).

That the potential result—death—was present both before and after Coleman sold the Powermate 5045 does not mean, as the majority believes, that no appreciable new risk or danger of death arose after the time the product was put on the market. This erroneous conclusion stems from the majority's conflation of risk and result. A risk, however, is the "*uncertainty* of a result, happening, or loss; the *chance* of injury, damage or loss; esp[ecially], the existence and extent of the *possibility* of harm. *Black's Law Dictionary* 1442 (9th ed. 2009) (emphasis added). In the case before us, Coleman manufactured and sold a product with the belief that the product

carried with it a certain risk, or chance, of harm. Later, after the time the product was sold and put on the market, Coleman learned that the Powermate 5045's safety features and warnings were inadequate to protect consumers from a risk that was far greater than the company first believed to exist. Consumers kept dying. Once Coleman obtained this new knowledge of the heightened risk, I would hold that, as a matter of law, the company bore a post-sale duty to warn consumers of the newly perceived risk.[1]

I would also hold that the district court abused its discretion by excluding evidence of accidents involving other models of Coleman propane heaters. According to a Consumer Products Safety Commission report, these accidents resulted in fifty-eight carbon monoxide deaths. Nevertheless, the district court ruled that the other incidents were not substantially similar to the incident at issue here because the other heaters bore different labels than the Powermate 5045. "The 'substantially similar' predicate for the proof of similar accidents is defined . . . by the defect . . . at issue." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986), *cited with approval by Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). The alleged defect at issue here is excess production of carbon monoxide. The Powermate 5045 and the other heaters all suffered from this same defect. Furthermore, some of the other heaters, such as the Focus 15 and Focus 30, are visually similar to the Powermate 5045. Incidents involving other heaters were therefore substantially similar to the incident involving the Powermante 5045 here. Evidence of those other incidents should have been admitted.

Lastly, I would hold that the district court abused its discre-

---

[1]Because Coleman did not learn, and could not have learned, of the heightened risk until after the time of sale, this conclusion does not conflict with the jury's determination that Coleman's time of sale warnings were adequate. *See Restatement (Third) of Torts: Product Liability* § 10 at comment c.

tion by excluding a report from Mari Daniel's expert, Gary Hutter. Hutter submitted an expert report, based in part on transcripts of Haney's testimony. Prior to the close of discovery, Haney happened to come home on leave from Iraq. Only then was Hutter able to speak face to face with Warrant Officer Haney. After learning additional information during this in-person interview, Hutter realized that his earlier report was wrong, and attempted to submit a report correcting his earlier misunderstanding. Though the discovery period had not yet closed, and though trial would not commence for almost three months, the district court rejected Hutter's report, and any related testimony, as untimely. In a serious case such as this one, involving a dangerous product and multiple deaths, a district court does not properly exercise its discretion when, in the name of judicial efficiency, it rejects an expert's attempt to get the facts right.

Accordingly, I dissent.